**IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **John Murray (N-84899),** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 13 C 8133** |
| **v.** | ) | |
| | ) | **Judge Charles R. Norgle** |
| | ) | |
| **Salvador Godinez, et al.,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John Murray, an inmate confined at Stateville Correctional Center, brought this 42 U.S.C. § 1983 civil rights suit asserting he endured extremely adverse living conditions at the prison. Defendants, former Stateville Wardens Marcus Hardy and Michael Lemke,[1] have filed a motion for summary judgment. Plaintiff has responded. For the following reasons, the Court denies in part and grants in part Defendants' motion. Plaintiff may proceed with his claims that he endured and was exposed to excessive pest infestations, excessive noise, and broken windows in his cell house. Summary judgment is granted for Defendants as to Plaintiff's other claims, which are dismissed.

### I. BACKGROUND

**A. Northern District of Illinois Local Rule 56.1:**

The Court derives the background facts from the parties' N.D. Ill. Local Rule 56.1 Statements and Responses, which assist the court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of*

---

[1] Two other parties listed as Defendants (the Illinois Department of Corrections Director Salvador Godinez and Wexford Health Sources), were dismissed in this Court's January 21, 2014 initial review order. (R. 6.)

*Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Under Local Rule 56.1(a)(3), the moving party must provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). The statement must "consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." Local Rule 56.1(a)

The non-moving party must admit or deny each factual statement offered by the moving party and refer to any material facts that establish a genuine dispute for trial. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). The non-moving party may submit its own statements of material facts, to which the moving party must reply. Local Rule 56.1(b)(3)(C) & (a)(3). This Court may consider true a Rule 56.1 factual statement that is supported by the record and that is not properly addressed by the opposing party. *Id.*; *see also Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). A plaintiff's *pro se* status does not excuse him from complying with these rules. *Greer v. Board of Ed. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993).

In this case, Defendants filed a Rule 56.1 Statement of Material Facts. (R. 31, Defs. SOF.) With their Statement, they include the following materials: Plaintiff's deposition; declarations from former Stateville Warden Marcus Hardy and current Stateville Major Maurice Hunter; extermination records from Critter Ridder, and water quality testing records. (*Id.*, Exhs. B, C, D, E, F.) Because Plaintiff is a *pro se* litigant, Defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (R. 32.) The notice explains the consequences of failing to properly respond to a motion for summary judgment and to a

statement of material facts. (*Id.*) Plaintiff responded to Defendants' Rule 56.1 factual statements and submitted his own additional facts, along with his own affidavit. (R. 37.)

Defendants responded to Plaintiff's additional facts. (R. 43.) They also seek to strike several of Plaintiff's factual statements as either contradictory to his deposition testimony, argumentative, or nonresponsive pursuant to Local Rule 56.1(b)(3)(B). (*Id.*) Plaintiff sought an extension of time to respond to Defendants' request to strike his statements, (R. 44), but no response was received. A response, however, is unnecessary to rule on Defendants' motion, which the Court denies.

Defendants are correct that a plaintiff's statements submitted by affidavit that contradict his prior deposition testimony can be excluded as "a sham designed to thwart the purposes of summary judgment." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015). But such exclusions apply only when "the witness has given 'clear answers to unambiguous questions which negate the existence of any genuine issue of material fact.'" *Id.* at 572 (quoting *Van T. Junkins & Assocs., Inc. v. United States Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)); *see also Delgado v. Roadco Transp. Services, Inc.*, No. 14 C 4429, 2016 WL 362380 at *2 (N.D. Ill. Jan. 29, 2016) (Kocoras, J.). Plaintiff's affidavit and responses to Defendants' Local Rule 56.1 statements do not contradict his deposition testimony. The differences between Plaintiff's deposition testimony, his affidavit, and his Local Rule 56.1 responses noted by Defendants—whether there are lights and windows in Plaintiff's cell; whether he knows the source of water for Stateville; and how he knows paint on the walls and bars is lead-based—demonstrate no "sham designed to thwart the purpose of summary judgment," *Castro*, 786 F.3d at 571, but instead, Plaintiff's attempts to explain issues not fully fleshed out in his deposition.

To the extent Defendants also seek to strike Plaintiff's Rule 56.1 responses as noncompliant with Rule 56.1, such responses need not be stricken. Instead, where Plaintiff does not properly respond to a Local Rule 56.1 statement that is adequately

3

supported by the record, Defendants' statement may be considered true. *See* Local Rule 56.1(b)(3)(C). The Court may do the same for Plaintiff's statements of fact to which Defendants do not adequately reply. *Id.* With the above standards in mind, the Court turns to the facts of this case.

### B. Facts:

Plaintiff is confined at Stateville Correctional Center. (R. 31, Defs. SOF & R. 37, Pl. Resp. ¶ 1.) He arrived at Stateville about four years before he filed this suit in 2013. (*Id.* at ¶ 7.) Plaintiff's current cell is in E House. (*Id.* at ¶ 8). He has also been housed in cells in F and B Houses. (R. 31, Pl. Depo. at 32.) His claims mainly involve E and F Houses. (*Id.*) Defendants previously served as wardens of Stateville. (Defs. SOF at ¶ 2.)

Plaintiff's complaint alleges he endured several adverse living conditions at Stateville: (1) cells are painted with lead-based paint and other carcinogens; (2) broken windows in his cell house allow cold air in during winter; (3) ventilation is inadequate due to vents being covered with metal plates; (4) the walls of his cells and cell houses have black and discolored mold; (5) cells, as well as cell houses, are filthy; (6) constant lighting and constant loud noise prevent sleep; (7) there are infestations of cockroaches, mice, and birds; and (8) the drinking water is contaminated. (Defs. SOF & Pl. Resp.. at ¶9); *see also* (R. 19, Amended Compl. at 4-5.)

**Lead Paint:**

Plaintiff's cell walls and bars have layers of paint, which are constantly peeling. (R. 31, Defs. SOF ¶ 10, citing Exh. B, Pl. Depo. 30-31.). Plaintiff assumes the paint is lead-based. (*Id.*) Although not stated in his deposition, Plaintiff contends maintenance men at the prison informed him that the paint is lead-based and contains toxins. (R. 37, Pl. Additional Facts ¶ 3.)

**Broken Windows:**

Plaintiff alleges there are broken windows in his cell house, but acknowledges that there are no windows in his cell. (R. 31, Defs. SOF ¶ 15.) No cells in E House have windows. The windows are located about eight feet from cells. (R. 37, Pl. Resp. ¶ 15.) Broken windows near Plaintiff's cell and throughout E House allow cold air in during winter. (R. 37, Pl. Add. SOF ¶ 1; *see also* R. 31, Pl. Depo. at 33-34.)

**Ventilation:**

Stateville's E and F Houses have exhaust fans or large, commercial pedestal fans to circulate air. (R. 31, Defs. SOF ¶ 23.) Cell houses are heated with steam heat and have air handlers for ventilation; the handlers have filters that are cleaned regularly. (*Id.*) Both houses have return air vents in cells, which are cleaned regularly. (*Id.*) Defendants contend that inmates cover vents with paper (*id.*); however, Plaintiff states vents are covered with metal plates. (R. 37, Pl. Resp. ¶ 23.) He further states that the lack of ventilation has aggravated his asthma. (R. 31, Pl. Depo. at 34-35, 56-57.)

**Lights:**

Lights are kept on in the gallery outside Plaintiff's cell. (R. 31, Defs. SOF & R. 37, Pl. Resp. ¶ 11.) Plaintiff explains that the light shines into his cell and beams on his face when he tries to sleep. (*Id.*; *see also* R. 31, Pl. Depo. at 36.) The lights are kept on all night. (Pl. Depo. at 36.) When it is time for inmates to go to sleep, officers turn the lights down, but not off. In the morning when it is time to count inmates, the lights are turned up. (*Id.* at 36-37.) The parties dispute whether lights are kept on for security reasons. According to Defendants, lights in the common areas of E and F Houses stay on 24 hours a day so staff can see as they conduct rounds. (Defs. SOF ¶ 33.) Plaintiff does not know if the lights are for security, (Defs. SOF & Pl. Resp. ¶ 12), but he states that officers are supposed to turn lights down at night. (Pl. Resp. ¶ 33, citing Pl. Depo. at 37.) Although Plaintiff alleged in his complaint that the lights prevent him from sleeping,

when asked at the beginning of his deposition if he got enough sleep the night before, he responded "most definitely." (Defs. SOF ¶ 13, quoting Pl. Depo. at 5.) He later testified: "I can rest, but, you know, not like apparently I'm supposed to rest, because of the loud noises and the bright lights." (Pl. Resp. ¶ 13, citing Pl. Depo. 36.)

**Noise:**

According to Plaintiff, the noise at Stateville is loud and constant. (R. 37, Pl. Add. Facts 4.) Defendants do not address Plaintiff's claim about loud, constant noise in their Local Rule 56.1 Statement of Facts; nor did they ask Plaintiff to elaborate on this issue in his deposition beyond asking if he was able to sleep the night before. (R. 31, Pl. Depo. at 35-36.)

**Mold:**

Plaintiff complains that there is mold throughout his cell. (R. 31, Defs. SOF & R. 37, Pl. Resp. ¶ 14.) When asked in his deposition how he knows the substance is mold, he responded: "Because I know mold." (*Id.*, quoting Pl. Depo. at 33.) According to the declarations of Defendant Hardy and Stateville Correctional Major Darren Hunter, if an inmate complained of mold in his cell, a maintenance person would be contacted. (Defs. SOF ¶ 28.) Defendant Hardy swears in his declaration that he does not recall any instances of mold being present during his tenure as warden. (*Id.*, citing Exh. C, Hardy Aff. ¶ 9.) Plaintiff, however, swears in his affidavit that mold exists in his cell, that it exists throughout Stateville due to leaking ceilings, and that he spoke to both Lemke and Hardy about conditions at Stateville. (R. 37, Pl. Aff. ¶¶ 6, 11.)

**Cleaning Supplies:**

Cleaning supplies in both E and F Houses were available upon request and were provided to inmates on a weekly basis. (R. 31, Defs. SOF ¶ 29). Cleaning supplies included liquid soap, germ killers, and scouring powder. (*Id.*) Each unit had a schedule when cleaning supplies were provided, and officers made weekly rounds and offered

inmates such supplies. (*Id.*) Plaintiff's response does not deny that at least some cleaning supplies were available. He instead states "no disinfect[ant] is issued to inmates," (R. 37, Pl. Resp. ¶ 29), and inmates "don't get to disinfect where we're supposed to get to disinfect." (R. 31, Exh. B, Pl. Depo. at 30.)

**Roach, Mice, and Bird Infestations:**

According to Plaintiff: all cells have roaches and mice; roaches have crawled on him; mice have crawled in his bed and eaten food in his property box; birds fly into his cell and over inmates in the chow hall; and bird droppings are everywhere. (R. 37, Pl. Additional Facts ¶¶ 3, 8, 9, citing Pl. Aff. ¶¶ 3, 9, 10.) Although he alleged in his complaint that roaches have crawled in inmates' ears and laid eggs, he clarified in his deposition that this never happened to him, but instead, to another inmate. (R. 31, Defs. SOF ¶ 17, citing Pl. Depo. at 40-41; Pl. Resp. ¶ 17.)

For years, the State of Illinois has had a contract with an exterminator known as Critter Ridder. (Defs. SOF ¶ 24.) The exterminator visits Stateville several times a month to spray. (*Id.*). The parties dispute whether the exterminator sprayed inside inmates' cells. According to Defendants, to address increased complaints of roaches, a schedule was developed to spray inside cells. (*Id.* ¶ 25). To do so, inmates were removed from cells and then returned. (*Id.*) Defendants further contend that, if complaints were received about roaches in a particular area, the warden would follow up with staff as to the exterminator's schedule and ask the exterminator to pay special attention to those areas. (*Id.* at ¶ 27.) If there were complaints about mice, the warden would ask the exterminator for more glue strips. (*Id.*) Plaintiff swears in his affidavit, however, that the exterminator sprays the walls outside his cell, but never inside, and that he has never been given glue traps. (R. 37, Pl. SOF ¶¶ 6, 7, citing Pl. Aff. ¶¶ 7, 8.)

As to the issue of birds, Defendants state that screens were placed in cells to prevent birds from flying in, cell houses were power washed, and areas where birds congregated were washed. (R. 31, Defs. SOF ¶ 26).

**Contaminated Water:**

The City of Crest Hill provides Stateville with its water supply. (R. 31, Defs. SOF ¶ 30.) Water at Stateville is tested monthly and annually and all results have been within acceptable ranges. (*Id.*, *see also* R. 31, Exh. G, Annual Drinking and Ground Water Quality Reports for 2009, 2010.) Warden Hardy was unaware of any staff members or inmates being diagnosed with conditions related to the water, and Hardy drank the water on a daily basis. (Defs. SOF ¶ 30.) Plaintiff contends the water at Stateville is brown and has a foul, sewer-like odor. (R. 37, Pl. Resp. ¶ 30, citing Pl. Depo. at 41).

**Grievances and Notification to Defendants:**

Plaintiff stated in his deposition that he could not remember how many grievances he filed or if he sent any to either Defendant. (Defs. SOF ¶ 20.) However, Plaintiff swears in his affidavit that he spoke to both Defendants about the conditions at Statevillle. (R. 37, Pl. Aff. ¶ 6.)

## II. DISCUSSION

### A.    Summary Judgment Standard Under Fed. R. Civ. P. 56:

Pursuant to Federal Rule of Civil Procedure 56(a), this Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To establish that a material fact is undisputed, a party "must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." Rule 56(c)(1). "The court need consider only

the cited materials, but it may consider other materials in the record." Rule 56(c)(3). This Court must "construe all facts and draw all reasonable inferences in favor of the nonmoving party in determining whether the moving parties have demonstrated that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law." *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if there is evidence "to permit a jury to return a verdict for" the nonmoving party. *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010).

As previously noted, the summary judgment record in the instant case consists of: Plaintiff's deposition, his affidavit, Defendant Marcus Hardy's declaration, a declaration from Darrin Hunter (a current major at Stateville), extermination records from Critter Ridder, and water quality documents. For purposes of this opinion, the Court first addresses the conditions for which there is documentary evidence in addition to the parties' declarations and affidavit, i.e., the alleged pest-infestation problem at Stateville and the allegedly contaminated water at the facility. The Court then addresses the other

conditions, for which the summary judgment evidence essentially boils down to conflicting statements from Plaintiff, one Defendant, and a current major at Stateville.

## B.   Deliberate Indifference to Adverse Living Conditions:

The Eighth Amendment requires a minimum standard for the treatment of inmates by prison officials. Prison conditions cannot involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.]" *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).

To establish a constitutional violation with respect to an inmate's living conditions, he must be able to demonstrate both: (1) the conditions were objectively so adverse that they deprived him "of the minimal civilized measure of life's necessities," and (2) the defendants acted with deliberate indifference with respect to the conditions. *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008), quoting *Farmer v. Brennan*, 511 U.S. 832, 834 (1994). "Life's necessities include shelter, heat, clothing, sanitation, and hygiene items." *Woods v. Schmeltz*, No. 14-CV-1336, 2014 WL 7005094 at *1 (C.D. Ill. Dec. 11, 2014) (citing *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006)); *see also Budd v. Motley*, 711 F.3d 840, 842-43 (7th Cir. 2013). The deprivation, however, must be sufficiently serious. To implicate the Eighth Amendment, the condition must create a serious risk to an inmate's health or safety or be sufficiently prolonged so as to cause significant pain or discomfort. *Thixton v. Berge*, No. 05-C-620-C, 2006 WL 167444 at *2 (W.D. Wis. Jan. 23, 2006) (citing *Leslie v. Doyle*, 125 F.3d 1132, 1137 (7th Cir.1997) ("the Constitution does not create a cause of action for arbitrary and purposeless acts by officials per se [citation omitted]; it prohibits the abuse of power that effects a significant

deprivation")). Furthermore, "conditions of confinement, even if not individually serious enough to work constitutional violations, may violate the Constitution in combination when they have 'a mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Budd*, 711 F.3d at 842-43 (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

"Deliberate indifference . . . means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Townsend*, 522 F.3d at 773. Establishing that an official acted negligently does not suffice. "Instead, the inmate must show that the official received information from which the inference could be drawn that a substantial risk existed, and that the official actually drew the inference." *Id.*

**Pest Infestation:**

According to Defendants, Plaintiff can establish neither that the pest infestation at Stateville during the relevant time period was sufficiently serious nor that Defendants acted with deliberate indifference. The summary judgment record, however, shows that there are disputed issues of material facts with respect to both elements of the deliberate-indifference analysis.

"[A] prolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation sufficient to constitute a due process violation." *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008). "Depending on how extensive the infestation of a prisoner's cell is, what the infesting pests are, what odors or bites or risk of disease they create, what particular psychological sensitivities the prisoner was known to have . . ., and how long the infestation continues, a trier of fact might

reasonably conclude that the prisoner had been subjected to harm sufficient to support a claim of cruel and unusual punishment." *Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012).

According to the evidence in the record, roaches have crawled on Plaintiff several times and he has heard that they have crawled in another inmate's ear. Plaintiff has been woken up by roaches crawling on him; he "had to kill a couple of them" the night before his deposition; he "fight[s] 'em every night;" and he has "to close [his] ears up every night." (R. 31, Pl. Depo. at 40.) Also, food that is left out attracts swarms of ants and termites; mice have eaten food inside his property box and have crawled in his bed; and birds fly throughout his cell house and cell, even while he eats; and bird droppings are everywhere. (R. 37, Pl. Aff. ¶¶ 3, 10.)

Cases with facts similar to or not much worse than Plaintiff's have survived summary judgment. *See White v. Monahan*, No. 07 C 437, 2013 WL 587511 at *8 (N.D. Ill. Feb. 14, 2013) (Lee, J.); *Barbosa v. McCann*, No. 08 C 5012, 2011 WL 4062469 at *6 (N.D. Ill. Sept. 12, 2011) (Pallmeyer, J.). In *White*, the inmate presented evidence to allow a jury to find that "his cells were infested with cockroaches, ants, wasps, bees, spiders, gnats, and mosquitoes" for a four-year period. *White*, 2013 WL 587511 at *8. Additionally, the inmate often awoke with red welts from insect bites and estimated he had been treated ten times for infections related to insect bites. *Id.* In *Barbosa*, evidence in the record indicated the inmate could prove that insects and cockroaches were "rampant," that there were so many that he could sleep only a few hours at night, and that bugs or mice crawled on him and bit him. *Barbosa*, 2011 WL 4062469, at *6. Although the court ultimately determined that the extensive spraying established the absence of

deliberate indifference, *Barbosa v. McCann*, No. 08 C 5012, 2012 WL 4471218 at *3 (N.D. Ill. Sept. 26, 2012) (Pallmeyer, J.), the infestation problem was sufficiently serious for the first element of the deliberate-indifference analysis.

The above cases are in line with the Seventh Circuit's 20-year-old analysis of this issue, *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996), wherein a Cook County Jail inmate alleged that cockroaches were "everywhere," "crawling on his body (along with mice)" and "constantly awaken[ing] him." *Id.* at 1431. Although *Antonelli* addressed the initial review of a complaint, as opposed to consideration of a more fully developed record at the summary judgment stage, the Seventh Circuit indicated that a prolonged exposure to a significant pest infestation, if true, was serious enough to support a constitutional violation. *Id.* By contrast, allegations that an inmate "saw 'several' cockroaches crawling in his cell" over a six-year period and was twice bitten did not describe a sufficiently serious condition. *Sain*, 512 F.3d at 894.

Plaintiff's deposition testimony and affidavit statements described above, if believed by a trier of fact, could support a finding that the infestation problem he experienced was sufficiently serious. Whether Plaintiff's description of the problem is accurate or credible is not something this Court can decide on summary judgment. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (when addressing a motion for summary judgment, a court "may not weigh conflicting evidence or make credibility determinations").

Summary judgment on this issue thus depends upon whether the record establishes the absence of deliberate indifference by Defendants. They contend they took reasonable steps to address the pest-infestation problem. According to the declarations

submitted with their motion, Critter Ridder (the prison's exterminator) came to "Stateville several times per month to spray the common areas and would make an additional visit to spray inside individual cells." (R. 31, Exhs. D & E, Declarations of Marcus Hardy and Darrin Hunter at ¶ 4.) To address increased complaints of cockroaches, Warden Hardy directed that individual cells be sprayed once a month. (*Id.* at ¶ 5.) Defendant Hardy states that inmates would be taken out of their cells and then returned to allow for the spraying of individual cells. (*Id.*) Hardy states that "this had not been done in the past," (*id.*), but "[o]nce these changes were implemented, there were fewer complaints about cockroaches." *Id.* at ¶ 6.

Plaintiff, however, swears that the exterminator "sprays the walls outside the cells" but "does not spray inside of the cells." (R. 37, Pl. Aff. ¶ 7.)

The parties thus dispute whether individual cells were sprayed. The exterminator records provided with Defendants' summary judgment materials—though showing that an exterminator visited the prison several times a month between 2010 and 2013—show that each cell house, or at least E and F Houses, were sprayed once a month and that only four times were individual cells sprayed in these houses: three times in F House (on December 16, 2010, October 20, 2011, and May 17, 2012), and once in E House (on December 13, 2012). (*See* R. 31-6, Exh. F.)

The extermination records from 2010 through June of 2013 thus suggest that Plaintiff's contention is essentially correct—areas outside cells were sprayed once a month and the inside of cells were sprayed about once a year. Spraying the areas outside cells only once a month, however, may not indicate deliberate indifference. *Sain*, 512 F.3d at 895 ("exterminations . . . made monthly and in response to plaintiff's requests[]

certainly cannot support a claim of deliberate indifference here"); *Barbosa*, No. 08 C 5012, 2012 WL 4471218 at **1, 3 (evidence that exterminator visited Stateville eight times a month and sprayed the areas outside cells, including "in front of the cells," "on the front of [his cell] door" and "at the bottom [of the door]," sufficiently established the lack of deliberate indifference for summary judgment purposes); *Agnew v. Hardy*, No. 11 C 0043, 2012 WL 5412109, at *5 (N.D. Ill. Nov. 5, 2012) (Darrah, J.) ("the once-a-month spraying by an exterminator, which Plaintiff does not dispute, demonstrates that he cannot establish that Defendant consciously disregarded a pest infestation").

Defendants in the instant case, however, do not argue that spraying once a month outside of cells establishes the absence of deliberate indifference. They, in fact, indicate that once-a-month sprayings outside of cells was not sufficient and that "[t]o address increased complaints about cockroaches, [Warden Hardy] developed a schedule for the exterminator to spray inside individual cells on a monthly basis," which "had not been done in the past." (R. 31, Exh. C, Hardy Aff. ¶ 5.) This statement indicates that there was a need for more aggressive sprayings than once a month outside cells. But the exterminator's records show that, between 2010 and 2013, cell houses were never sprayed more than monthly and individual cells were sprayed at most once a year. (*See* R. 31, Exh. E.)

It is thus unclear from the evidence if Plaintiff was subjected to an unconstitutionally adverse pest-infestation condition for years, during which time, his cell house was sprayed once a month and his cell was sprayed at most once a year. A jury could find that Plaintiff was subjected to an unconstitutional condition of confinement and that Defendants acted with deliberate indifference to that condition. The Court thus

denies summary judgment for Defendants on Plaintiff's claims that the pest-infestation problem at Stateville amounted to a constitutional violation.

**Contaminated Water:**

The evidence in the record establishes the following: the city of Crest Hill supplies Stateville's water; both Stateville's and Crest Hill's water was tested on a monthly basis between 2009 and 2011; and reports of such testing showed no levels of contaminants (lead, copper, radium, cleaning supplies) above acceptable Environmental Protection Agency ("EPA") levels. (*See* R. 31, Exh. G.) Plaintiff does not dispute that Stateville's water was regularly tested and that test results showed no contaminants above acceptable EPA levels. He instead contends that, prior to obtaining its water from Crest Hill, Stateville used well water, which contained radium. (R. 38 at 10-11.) According to Plaintiff, radium accumulated in Stateville's pipes and, thus, the prison water contains unacceptable levels of radium, a carcinogen. (*Id.*) Plaintiff additionally states water comes out "totally brown[ and] smells terrible, like a sewer smell." (R. 31, Pl. Depo. at 41.)

Deliberately supplying inmates with water containing carcinogens and contaminants can be considered cruel and unusual punishment. "But failing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not." *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001). "Many Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Id.*

Although the Court allowed this claim to proceed, now that Defendants have provided reports of water testing results from 2009 to 2011 showing no contaminants above acceptable EPA levels, the record demonstrates that Plaintiff cannot succeed on this claim. Plaintiff points to no evidence to support his claim of contaminated water. Nor does he indicate that discovery is incomplete for this issue. *See* Fed. R. Civ. P. 56(d). Instead, he theorizes that the pipes are corroded with radium from years of using well water prior to Stateville switching to using Crest Hill's water. But water quality tests results submitted by Defendants from both Stateville and Crest Hill indicate that neither use water with unacceptable levels of radium or other contaminants. Plaintiff has not "set forth specific facts showing that there is a genuine issue for trial" on this claim. *Hannemann*, 673 F.3d at 751 (once a defendant presents evidence demonstrating the absence of a disputed issue of fact, the plaintiff must come forward with evidence).

As to Plaintiff's contention that water comes out brown and smells bad, such a claim does not indicate a constitutional violation. Courts have held that "an inmate is not entitled to have running water in his cell." *Scruggs v. SinClair*, No. 3:16-CV-039 JD, 2016 WL 344534 at *2 (N.D. Ind. Jan. 27, 2016) (citing *Williams v. Collins*, No. 14 C 5275, 2015 WL 4572311 (N.D. Ill. July 29, 2015) (citing *Jelinek v. Roth*, No. 93-3316, 1994 WL 447266, at *2 (7th Cir. Aug. 19, 1994)); *see also Allen v. Hardy*, 11 C 4147, 2012 WL 5363415 at *8 (N.D. Ill. Oct. 26, 2012) (Norgle, J.). Even if Plaintiff could establish that tap water at Stateville is brown and foul smelling, he does not indicate he was deprived of drinking water. *McNeal v. Ellerd*, 823 F. Supp. 627, 632 (E.D. Wisc. 1993) (Reinhard, J.) (although inmates have "a basic right to adequate drinking water," a "dysfunctional sink alone is not necessarily cruel and unusual punishment"). Plaintiff in

fact acknowledges he has been able to buy bottled water from commissary. (R. 31, Pl. Depo. at 41.) Defendants having submitted water quality tests for the relevant period of time showing acceptable levels of contaminants and Plaintiff having demonstrated neither that the water is contaminated, that additional discovery is needed, nor that he has been deprived of drinking water, summary judgment on this claim is appropriate at this time. Summary judgment is granted for Defendants on this claim.

**Lead Paint:**

The record before this Court contains little to no evidence establishing whether or not Plaintiff's cell is painted with lead-based paint. In his deposition, he testified that paint in his cell and throughout his cell house is peeling. (R. 31, Pl. Depo. at 30-31). When asked how he knows the paint contains lead, Plaintiff stated simply that he assumed there was lead paint in his cell given the number of layers. (*Id.*) Presumably Plaintiff's reasoning is that the older layers of paint must be lead-based. The only evidence he points to is his affidavit wherein he states that maintenance personnel at the prison informed him that the paint had lead and other toxins because the building was built in the 1930s. (R. 37, Pl. Add. Facts ¶ 3).

Whether older layers of paint in Plaintiff's cell and cell house are lead-based remains a disputed issue of fact. But even assuming that some of the layers of paint in Plaintiff's cell are lead-based, such a condition is not *per se* unconstitutional. As noted above, the "fail[ure] to provide a maximally safe environment, one completely free from pollution or safety hazards, is not" cruel and unusual punishment. *Carroll*, 255 F.3d at 472. "Many Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide prisoners with more salubrious

air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Id.* (citing *McNeil v. Lane*, 16 F.3d 123, 125 (7th Cir. 1993)). In *McNeil*, the Seventh Circuit noted that, if an inmate alleged he was forced to stay in a cell where "friable asbestos filled the air," he might state a claim of an unconstitutional condition, but "[e]posure to moderate levels of asbestos is a common fact of contemporary life and cannot, under contemporary standards, be considered cruel and unusual."

"The judges of this court have repeatedly held that claims of lead paint undercoats on prison walls are not the kind of deprivation of basic human needs redressable under the Eighth Amendment." *Mejia v. McCann*, No. 08 C 4534, 2010 WL 5149273, at *8 (N.D. Ill. Dec. 10, 2010) (Conlon, J.); *Walker v. Dart*, No. 09 C 1752, 2010 WL 669448 at *3 (N.D. Ill. Feb.19, 2010) (Andersen.J.); *Jones v. Mitchell*, No. 93 C 405, 1994 WL, 517202 at *3-4 (N.D. Ill. Sep.20, 1994) (Moran, J.); *Foster v. Cooper*, No. 92 C 6159, 1994 WL 110180 at *9 (N.D. Ill. Mar.28, 1994) (Marovich, J.).

Plaintiff's exposure to moderate levels of lead-based paint appears to be "a common fact of contemporary life," *McNeil*, 16 F.3d at 125; unfortunate, but not unconstitutional. Summary judgment is granted for this claim.[1]

---

[1] The Court notes Plaintiff's contention that deliberate indifference can exist where "prison officials create[ ] a likelihood of future harm even if no actual harm is presently manifested." *Devbrow v. Kalu*, 705 F.3d 765, 769 (7th Cir. 2013). But a plaintiff asserting such a claim "must still prove to a degree of reasonable medical certainty that he himself faces [an] increased risk" of "developing a serious medical condition." *Henderson v. Sheahan*, 196 F.3d 839, 851–52 (7th Cir. 1999). At the summary judgment stage, a plaintiff is expected to present the evidence he intends to use at trial to prove his claim. *See Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) ("We often call summary judgment, the 'put up or shut up' moment in litigation, by which we mean that the non-moving party is required to marshal and present the court with the evidence she contends will prove her case. And by evidence, we mean evidence on which a reasonable jury could rely."); *see also Williams v. Patel*, No. 11 C 9193, 2013 WL 6019543 at *5 (N.D. Ill. Nov. 13, 2013). Plaintiff neither has produced any evidence that

**Broken Windows:**

There are disputed issues of fact as to whether there are broken windows at Stateville that allow cold air in during winter. Defendants' request for summary judgment on this claim does not adequately address this issue. Plaintiff alleges: "many of the windows are broken causing the cell house to become cold in the winter season with gusts of wind blowing throughout the unit." (R. 19, Amended Compl. at 4.) He testified in his deposition, "there are numerous windows broken right now in E House by 117." (R. 31, Pl. Depo. at 33.) Defendants do not dispute that there are broken windows in E House or that cold wind blows throughout the cell house because of the broken windows. Instead, they state only: "Plaintiff complains of broken windows but admits that there are no broken windows in his cell." (R. 37, Defs. SOF ¶ 15.) Nothing in Plaintiff's complaint or deposition, however, indicate he complains of broken windows *in* his cell.

The right to adequate shelter includes "a right to be free from extreme hot and cold temperatures." *Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1087 (7th Cir. 1986); *see also Gillis*, 468 F.3d at 494. Given that Defendants offer no evidence addressing this issue, they have not met their burden under Rule 56(a). Summary judgment for this claim is denied.

**Adequate Ventilation:**

According to the declarations of former Warden Hardy and Major Hunter, both E and F Houses have exhaust fans and/or large commercial pedestal fans for ventilation; both houses are heated with steam heat with air handlers with filters for airflow; and

---

exposure to lead-based based paint will more likely cause him to develop a serious physical injury nor does he indicate that he needs to conduct additional discovery on this issue. *See* Rule 56(d). Summary judgment is warranted on this issue.

inmates cover their vents with paper, thus causing the problems with adequate ventilation. (R. 31, Exhs. C and D ¶ 3.) Although Plaintiff denies that F House has an exhaust fan and that inmates cover their cell vents, he cites no evidence in the record to support his contention. (R. 37 ¶ 23.) Nor does Plaintiff address whether E House has an exhaust fan or commercial pedestal fan to assist with airflow. (*Id.*) His own affidavit, though addressing most of the conditions alleged in his complaint, says nothing about air ventilation. (*See generally* R. 37, Exh. A, Pl. Aff.)

Defendants' explanation about the air ventilation at Stateville demonstrates an absence of a disputed issue of material fact on this issue, to which Plaintiff has not sufficiently responded. Furthermore, Plaintiff's claim of numerous broken windows near his cell (discussed above) suggests that, at least on windy days, ventilation exists in his cell house. *See Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir.1997) (alleged lack of proper air ventilation did not rise to a constitutional violation where cell had a window which opened and the cell door had a small chuckhole for ventilation); *Allen v. Hardy*, No. 11 C 4147, 2012 WL 5363415, at *6 (N.D. Ill. Oct. 26, 2012) (Norgle, J.) (summary judgment granted for claim of inadequate ventilation where prisoner was able to request that a window be opened). Summary judgment is granted for Defendants on this claim.

**Excessive Noise:**

As to Plaintiff's claim that he is exposed to loud, constant noise that prevents sleep, the record is undeveloped. According to the summary judgment evidence, "noise is loud and constant" at Stateville, (R. 37, Pl. Aff. ¶ 5), and such a condition prevents sleep. (R. 31, Pl. Depo. at 35-36.) According to Plaintiff, "inmates scream daily," "there are loud televisions and radios," and "this noise never stops." (R. 38 at 16.) Defendants'

Rule 56.1 factual statements, as well as their accompanying declarations, do not address this claim. Although Defendants contend that Plaintiff's affidavit statement supporting this claim is self-serving and unsupported by any other evidence in the record, "[s]elf-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment." *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 459-60 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 2892 (2015).

The Court notes that Plaintiff testified that he was able to get a good night's sleep the night before his deposition, but there is no indication whether the noise the night before was comparable to the noise that is the subject of Plaintiff's claim.

Continuous excessive noise can support a claim of an unconstitutional condition of confinement. *See Antonelll v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir.1996) (constant, loud noise at night preventing sleep states a claim of an unconstitutional condition) (citing *Williams v. Boles*, 841 F.2d 181, 183 (7th Cir. 1988)). Courts, however, have held that excessively loud noise during the day that lessens at night does not support a claim of an unconstitutional condition. *Lieberman v. Budz*, No. 03 C 2009, 2009 WL 1437609 at *20 (N.D. Ill. May 20, 2009) (Gettleman, J.) (summary judgment was granted where noise "was excessively loud from dinnertime to lockup, but then quieted down around 10:45 p.m."); *Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir.1994) (allegations of only "a few hours of periodic loud noises that merely annoy[ed], rather than injure[d]" did not slate a claim of an unconstitutional condition).

More details are needed for Plaintiff's excessive-noise claim. The Court cannot determine based on the current record the severity of the noise at Stateville. Summary judgment is thus denied for this issue.

**Bright Lights:**

Plaintiff's deposition testimony about bright lights, contrary to his claim about constant loud noise, demonstrates he cannot succeed on his claim that lights kept on at night amounted to a constitutional violation. Plaintiff alleges that lights in the gallery are left on all night; however, he explained that officers "count [prisoners] during the morning time. That's when they turn the lights on. . . . [W]hen it's time to lay down and go to sleep, they shut 'em down. They supposed to cut 'em off, and they don't do that." (R. 31, Pl. Depo. at 36-37.) Plaintiff, however, stated that he "most definitely" got "enough sleep" the night before his deposition, when he presumably was subjected to the same lighting condition alleged in his complaint. (*Id.* at 5.) Unlike the noise issue discussed above, which may vary somewhat each night, the summary judgment evidence indicates that the cell-house lights follow a regular schedule. (*Id.* at 36-37.) Plaintiff's acknowledges that he does not know if lights remain on for security reasons. (*Id.* at 37.) Defendants explain that lights are kept on 24 hours a day in common areas to allow officers to see as they make rounds during the night. (R. 31, Exh. D, Hunter Aff. ¶ 13.)

Cases that have considered exposure to bright lights preventing sleep a potential constitutional violation have involved situations of serious sleep deprivation that caused or aggravated physical conditions. *See Kennan v. Hall*, 83 F.3d 1083, 1090-91 (9th Cir. 1996) (reversing grant of summary judgment on Eighth Amendment claim when inmate subjected to bright light 24-hours per day, such that he could not tell night from day, caused grave sleeping problems and psychological harm); *Golden v. Berge*, No. 03 C 0403, 2003 WL 23221483 at *4 (W.D.Wis. Sept.25, 2003) (Crabb, J.) (alleged exposure to constant lighting caused not only sleep deprivation but also head and eye pain and

psychological problems, including confusion and depression); *but see Williams v. Superintendent Dallas SCI*, 599 Fed. Appx. 421, 422 (3d Cir. 2015) (unpublished) (summary judgment allowed where cell lights were kept on from 6 a.m. to 12 a.m., but were "turned off for the remainder of the night," during which "a low-wattage 'night light' remained on"); *Chappell v. Mandeville*, 706 F.3d 1052, 1058 (9th Cir. 2013) (noting that constant illumination for security reasons indicated no constitutional violation).

Although Plaintiff states there is constant illumination, he acknowledges that lights are turned down at night and that he has been able to sleep (though not as well as he would like). Furthermore, the summary judgment evidence demonstrates that the 24-hour illumination of common areas is to allow nighttime officers conduct their rounds. Based on such evidence, Plaintiff cannot show that failing to turn lights in common areas completely off at night amounts to an unconstitutional condition of confinement. Summary judgment is granted for this claim.

**Cleaning Supplies:**

The summary judgment evidence demonstrates that inmates were given liquid soap, germ killers, and scouring powder on a weekly basis and upon request. (R. 31 ¶ 29.) Plaintiff does not refute these facts. Instead, he simply states that "no disinfectants are issued to inmates," (R. 37 ¶ 29), and "we don't get to disinfect where we're supposed to disinfect." (R. 37, Pl. Depo. at 30.)

The complete lack of cleaning supplies and seriously adverse conditions can demonstrate a constitutional violation. *Vinning–El v. Long*, 482 F.3d 923, 923–25 (7th Cir. 2007 ((reversing summary judgment when prisoner was deprived of basic sanitation

items while in a cell for six days in which blood and feces were smeared on the walls and there was no running water to allow cleaning of the cell); *see also Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (allegations similar conditions and no cleaning supplies stated a claim of unconstitutional conditions of confinement); *Budd*, 711 F.3d at 842 (45-day confinement in over-crowded cell with broken windows, no working sink, toilet covered in mold and spider webs, and no cleaning supplies stated unconstitutional conditions). But where inmates regularly had cleaning items available to them, no constitutional violation existed. *Allen*, 2012 WL 5363415 at *5; *see also Sanchez v. Walker*, No. 09 C 2289, 2010 WL 5313815, at * 9 (N.D. Ill. Dec.17, 2010) (Coleman, J.). The fact that Plaintiff was not given disinfectants as part of the cleaning supplies does not establish a constitutional violation. Disinfectants are not one of life's necessities and are not necessary to clean a cell. *Myrick v. Anglin*, 496 Fed. Appx. 670, 676 (7th Cir. 2012) ("[a]lthough [inmate] did not receive the specific cleaning supplies he requested, [he] does not allege that he was unable to clean his cell with supplies available to him"); *see also Sanchez*, 2010 WL 5313814 at *9 (no constitutional violation existed where, in the absence of cleaning supplies, inmate could have used available water and clothing to clean his cell). The record demonstrates that Plaintiff cannot succeed on this claim. Summary judgment is granted for this claim.

**Mold:**

The summary judgment record demonstrates that there is a disputed issue of fact as to the presence of mold at Stateville and in Plaintiff's cell. Neither Warden Hardy nor Major Hunter denies that mold exists at the facility. Instead, each contends: "I do not recall any instances of mold being present at Stateville between 2009 and 2012." (R. 31,

Exhs. C and D ¶ 9.) But Plaintiff swears that there is mold throughout the facility due to leaking ceilings. (R. 37, Pl. Aff. ¶ 11.) He also testified that there is mold in his current cell in E House and "most definitely, it's in F House." (R. 31, Exh. B, Pl. Depo. at 32.) Additionally, he swears he told both Defendants about the conditions at the facility. (R. 37, Pl. Aff. ¶ 6.)

The Court notes that, to the extent Defendants contend that they never heard of mold at the facility, such a contention is untenable given other cases from Stateville inmates with the same complaint as Plaintiff's. *See Ross v. Hardy*, No. 13 C 1069, 2014 WL 2135938 at *2 (N.D. Ill. May 22, 2014) (Durkin, J.); *Gray v. Hardy*, No. 11 C 7097, 2013 WL 5433280, at *6 (N.D. Ill. Sept. 30, 2013) (Pallmeyer, J.); *Allen v. Hardy*, No. 11 C 4147, 2012 WL 5363415 at *2 (N.D. Ill. Oct. 26, 2012) (Norgle, J.); *see also Miller v. Hardy*, 497 Fed. Appx. 618, 619 (7th Cir. 2012).

Although courts have indicated that the presence of mold can establish an unconstitutional living condition, those courts found that the presence of mold was sufficiently serious such that it caused physical problems. *See Thomas v. Cox*, 10-CV-997-GPM, 2011 WL 3205660, at *4 (S.D. Ill. July 27, 2011) (citing *Munson v. Hulick*, No. 10–cv–52–JPG, 2010 WL 2698279 (S.D. Ill. July 7, 2010)); *Mejia v. McCann*, No. 08–C–4534, 2010 WL 653536 (N.D. Ill. Feb.22, 2010); *Moran v. Rogers*, No. 07–cv–171, 2008 WL 2095532 at *1–5 (N.D. Ind. May 15, 2008)); *see also Board v. Farnham*, 394 F.3d 469, 486 & n.10 (7th Cir. 2005) (prisoners' claim that their asthma was worsened by exposure to mold and other substances was allowed to proceed). Plaintiff states that he suffers asthma; but he states he experiences "breathing problems from the vents [being closed]." (R. 31, Pl. Depo. at 56.) Nowhere does he indicate that his

exposure to mold affected him physically. Furthermore, as stated above, the record indicates that cleaning supplies (though not disinfectants) were available to him. Given the lack of any evidence that the presence of mold caused Plaintiff any physical difficulties and that he had access to cleaning supplies, he cannot succeed on this claim. *See Striblin v. Buncich*, No. 2:13-CV-22 PS, 2015 WL 4724899 at *7 (N.D. Ind. Aug. 7, 2015) ("the mere presence of some dirt, mold, or mildew at the jail does not establish the type of severe deprivation needed to establish a constitutional violation"). Summary judgment is granted for this claim.

**Pending Class Action Suit:**

Defendants correctly note that there is currently a class action pending concerning the same conditions at Stateville. *Dobbey v. Weilding*, No. 13 C 1068 (N.D. Ill.) (Dow, J.). The class, however, was certified for injunctive relief only. *See id.*, Order of 2/11/14, Amended Order Granting Class Certification, Doc. #41 at 6 ("The lawsuit asks that the Court order these conditions be fixed. It does not ask for money damages to be awarded to the Plaintiff Class."); *see also* Doc. #99 (the Class Notice explains: "The Dobbey case does not seek money damages. It is only seeking a court order requiring Stateville to improve its living conditions."). As explained by the Court in the *Dobbey* case, the class was certified under Fed. R. Civ. P. 23(b)(1) & (2), which allows for declaratory and injunctive relief. *Id.*, Doc. #102, Order of 1/14/15 (order denying inmates' motions to opt out to pursue their own lawsuits).

In the instant case, Plaintiff seeks monetary relief and "that the conditions be fixed at Stateville." (R. 19, Amended Compl. at 6.) To the extent he seeks injunctive relief, his requests the same relief sought in the *Dobbey* class action, of which he is a

member and from which he cannot opt out. Plaintiff may not pursue injunctive relief in this case. He may, however, continue with his claims for monetary relief. *See Jefferson v. Ingersoll Intern. Inc.*, 195 F.3d 894, 897 (7th Cir. 1999) ("Money damages under §1981a(b) are neither injunctive nor declaratory, and they do not affect a class as a whole.").

## CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Defendants' motion for summary judgment [#33]. Summary judgment is granted for Plaintiff's claims that he endured and was exposed to contaminated water, lead-based paint, inadequate ventilation, 24-hour lighting, inadequate access to cleaning supplies, and the presence of mold. These claims are dismissed. Summary judgment is denied for Plaintiff's claims that he endured and was exposed to excessive pest infestations; broken windows in his cell house; and loud, constant noise. Plaintiff may proceed with these claims. His motion for an extension of time to respond to Defendants' motion to strike [#44] is denied as unnecessary as the Court has denied that request by Defendants.

DATE: 2/29/16

Charles R. Norgle
United States District Judge